LINDA TIRELLI, ESQ.
OF COUNSEL TO DAVID BRODMAN, ESQ.
COUNSEL FOR DEBTOR, MS. TAMNDALA MIMS
ONE NORTH LEXINGTON AVE., 11TH FLOOR
WHITE PLAINS, NEW YORK 10601
PH(914) 946-0860 / FAX(914)946-0870

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN DIVISION

-----------------------------------------------------------------------X

**IN THE MATTER OF**

**TANDALA MIMS**
        **DEBTOR**

**CHAPTER 13**
**CASE NO: 10-14030(MG)**

-----------------------------------------------------------------------X

**TANDALA MIMS**
        **PLAINTIFF**

**v.**

Adv. Pro._____

**WELLS FARGO BANK, NATIONAL ASSOCIATION**
        **DEFENDANT**

-----------------------------------------------------------------------X

## COMPLAINT OF THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 506(A) AND BANKRUPTCY RULE 3012 TO DETERMINE THE VALUE OF SECURITY AND CREDITOR'S ALLOWED SECURED CLAIM AND COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1.      This is an action for actual and punitive damages filed by the Debtor / Plaintiff, Tandala

Mims, (hereinafter "Plaintiff " or "Debtor") pursuant to Sections 105, 362, 501, 502, 503 and 506 of

the Bankruptcy Code, and Rules 2016(a), 3001, 7001(1), 7001(2), 7001(7), 7001(8) and 7001(9) of

the Federal Rules of Bankruptcy Procedure to determine the interest of the Defendant in the

residential real estate of the Debtor and determine the amount of the allowed secured

claim, if any, of the Defendant.

2.      This Complaint focuses on the double-billing of escrow by Wells Fargo Bank, NA ( "Wells

Fargo") in its multiple claims against the Debtor's estate for improper amounts owed as certified

repeatedly by employees of Wells Fargo and its attorneys.

3.      This Complaint focuses on the fraud perpetrated on the Court and the Plaintiff by:

        (a)  the Defendant's after-the-fact fabrication of documents and enhancement of documents

including an unauthorized post-petition rubber stamp endorsement on a promissory note in support of

Wells Fargo's claims and pleadings in Ms. Mims bankruptcy case;

        (b)  the Defendant's fraudulent misrepresentation of the identity and authority of the

individuals who signed the documents intended to fabricate and /or bolster the Defendant's claim

including an Assignment of Mortgage and a rubber stamped endorsement on a promissory note;

        (c) the fraudulent misrepresentation of the owner and real party in interest; and

        (d) the fraudulent misrepresentation of the chain of transfers and ownership pertaining to the

Plaintiff's mortgage loan.

## II. JURISDICTION AND VENUE

4.      Jurisdiction is conferred on this Court pursuant to the provisions of 28 U.S.C. § 1334 in that

this Proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and

concerns property of the Debtor in that case.

5.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to

28 U.S.C §§ 157(b)(2).

6.      This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to

enter a final order. However, in the event this case is determined to be a non-core proceeding, then

and in that event, the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

7.      Venue lies in this District pursuant to of 28 U.S.C. § 1391(b).

### III. PARTIES

8.     The Plaintiff, Ms. Tandala Mims, is a natural person residing in Bronx, New York and is the

debtor in the underlying Chapter 13 case.

9.     The Defendant, Wells Fargo Bank, National Association ("Wells Fargo") is a financial

institution, and/or is a mortgage servicer, and/or is an insured depository institute as defined in

section 3 of the Federal Deposit Insurance Act, assigned FDIC Certificate Number 3511, and has

appeared through counsel in the instant bankruptcy case, with a business address of 101 N. Phillips

Avenue, Sioux Falls, SD 57104. Wells Fargo may be served by mailing a copy of the Summons and

Complaint, via certified first class U.S. Mail, to John Stumpf, CEO, Wells Fargo Bank, NA, 299

South Main Street, Salt Lake City, UT 84111.    Wells Fargo may be served by mailing a copy of the

Summons and Complaint, via certified first class U.S. Mail, to Carrie Tolstedt, President, Wells

Fargo Bank, NA, 633 Folsom Street, MAC A0149-071, San Francisco, CA 94107. Wells Fargo may

also be served by mailing a copy of the Summons and Complaint, via first class U.S. Mail, to Jim

Strother, General Counsel to Wells Fargo & Co., Office of Corporate Counsel, Wells Fargo Bank,

NA, 420 Montgomery Street, San Francisco, CA 94104-1207. Wells Fargo may also be served by

mailing a copy of the Summons and Complaint, via first class U.S. Mail to its counsel of record,

Nicole E. Schiavo, Hogan Lovells US, LLP, 875 Third Avenue, New York, NY 10022.

10.     Nothing in these pleadings shall serve as an admission that Defendant, Wells Fargo, has the

right to service Plaintiff's mortgage loan or that Defendant, Wells Fargo, actually owns the Plaintiff's

mortgage loan or has a secured interest in the Plaintiff's real property.

### IV. FACTUAL ALLEGATIONS

11.     Plaintiff purchased her homestead located at 1167 Grenada Place, Bronx, NY her primary

residence (hereinafter the "property" "premises" or the "homestead") in a transaction that closed

on May 10, 2004.

12.    The Plaintiff is a co- owner of the property together with Ms. Lydia Mims and Mr. Johnnie Belle.  The Plaintiff maintains the property as her primary residence.

13.    Lend America was the primary lender for the Plaintiff's purchase money mortgage loan for the property ( the "Lend America loan") in the original amount of $374,037.00 as evidenced by a Note dated March 10, 2004 and a Mortgage (hereinafter the "Mortgage") dated May 10, 2004 executed by the Plaintiff , Ms. Lydia Mims and Mr. Johnnie Belle.  A copy of the Mortgage is attached hereto as **"Exhibit "A".**

14.    Per the executed Note and Mortgage, Lend America was the original owner and holder of a purchase money first lien against the property.

15.    Between the date of the mortgage loan origination, May 10, 2004, and the date of filing the Plaintiff's Chapter 7 bankruptcy petition, based upon information and belief, the plaintiff paid her mortgage payments to a series of different entities purporting to service her mortgage loan.  The most recent entity sending the Plaintiff a billing statement prior to her bankruptcy filing date was "Wells Fargo Home Mortgage."

16.    At the time of filing her Chapter 7 petition, the Plaintiff scheduled the last known party requesting mortgage payments from her, namely "Wells Fargo Home Mortgage", on schedule D of her bankruptcy petition. Based upon the information submitted to the court and received post-petition, as further described herein below, which was not known to the debtor prior to the filing of her bankruptcy petition, the debtor hereby disputes the debt and creditor identified on Schedule D.

4

## A. Mims I: The First Motion for Relief From Automatic Stay

17.    On September 20, 2010, a Motion for Relief From Automatic Stay was filed in the

Plaintiff's Chapter 7 Bankruptcy case by Attorney Eret Van Horn of the law firm Steven J.

Baum, PC on behalf of its client "Wells Fargo Bank, NA" ( hereinafter "Mims I").

18.    The motion, supporting memorandum of law, and all supporting documentation

submitted to the court in Mims I are deemed "Representations to the court" Pursuant to F.R.B.P.

9011(b).

19.    The supporting documentation submitted in Mims I include, in part, the following

documents:

| **Mims I Motion Representations to the Court** |
| --- |
| 1.   Notice of Motion for Termination of Automatic Stay and Application executed by "Ehret A. Van Horn, Esq. of Steven J. Baum, PC"; |
| 2.   A two (2) page document entitled "Note" bearing the date "May 10, 2004" at page one, identifying the following:<br>  a.      Lender: "Lend America";<br>  b.      Borrower(s): Tandala Mims, Lydia Mims and Johnnie Belle<br>  c.      Principal Sum Borrowed: "$374,037.00";<br>  d.      Interest Rate: "6.0%";<br>  e.      Monthly Payment of Principal and Interest: "$2242.54"; and<br>  f.       Specific endorsement at the bottom left side of page 2 as follows:<br>       "Payable to the Order of: <u>Washington Mutual Bank, FA</u> Without Recourse, Lend America", signed by "<u>Helene DeCillis, Vice President</u>" |
| 3.   A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" identifying the parties to the mortgage as follows:<br>  a.      "Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>  b.      "Lender": Lend America; and<br>  c.       "Nominee" : MERS "For Purposes of Recording this Mortgage, MERS is the Mortgagee of Record." |
| 4.   A single page document "Assignment of Mortgage"  dated September 13, 2010, notably post-petition  and executed just one week prior to the date of filing Mims I,  identifying the following parties and representations to the court: |

a.   Original Lender: "Mortgage Electronic Registration Systems, Inc. as Nominee for Lend America"

b.   Assignor: "Mortgage Electronic Registration Systems, Inc as nominee for Lend America" ;

c.   Assignee : "Wells Fargo Bank, NA"; and

d.   Signed by "John Kennerty, Assistant Vice President" ( presumptively of the assignor[1]) notarized in York County, South Carolina by Notary, Wendy Albertson Al-Hammadi

5.   A five (5) page declaration by Mr. Craig C. Zecher, "Legal Process Specialist" dated September 16, 2010 which indicates the purported calculation of debt and **certifies the transactional documents as true and accurate copies of the originals.**

20.   On its own objection, the Court denied the Motion for Relief From Automatic Stay, without prejudice, in a published opinion, In re Mims, 438 B.R. 52, Bankr. Court, SD New York, 2010. The Court, in denying the Motion without prejudice, simultaneously provided a simple straightforward blueprint of what Wells Fargo Bank, N.A. must do to receive any relief from the automatic stay: "in the absence of a credible explanation, describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted." Mims at 57.

**B. Mims II: The Second Motion for Relief From Automatic Stay**

21.   On November 10, 2010, Wells Fargo Bank, N.A. through its attorneys, Steven J Baum PC, filed a second Motion for Relief from Stay and supporting Memorandum of Law, which appear as Documents # 20 and 21 on the Court's ECF system (hereinafter "Mims II").

22.   "Mims I" and "Mims II" motions are similar with exception to the items described further herein below. A side by side comparison of the supporting documents attached to both "Mims I" and "Mims II" Motions for Relief From Stay is set forth as follows:

---

[1] Based upon information and belief, said assignment of mortgage was recorded with the City Register, post-petition, on or about September 28, 2010.

| Mims I Representations to the Court | Mims II Representations to the Court |
|---|---|
| 1. Notice of Motion for Termination of Automatic Stay and Application executed by "Ehret A. Van Horn, Esq. of Steven J. Baum, PC"; | Notice of Motion for Termination of Automatic Stay and Application executed by "Dennis Jose, Esq. of Steven J. Baum, PC"; |
| 2. A two (2) page document entitled "Note" bearing the date "May 10, 2004" at page one, identifying the following:<br>a. Lender: "Lend America";<br>b. Borrower(s): Tandala Mims, Lydia Mims and Johnnie Belle<br>c. Principal Sum Borrowed: "$374,037.00";<br>d. Interest Rate: "6.0%"; and<br>e. Monthly Payment of Principal and Interest: "$2242.54";<br>f. Specific endorsement at the bottom left of page 2 as follows:<br>"Payable to the Order of: <u>Washington Mutual Bank, FA</u> Without Recourse, Lend America" and is signed by "Helene DeCillis, Vice President" | A two (2) page document entitled "Note" with identical content to that in Mims I *except that it appears to physically altered.* There are hole punch marks on the Mims I Note which do not appear on the Mims II Note. There is a bar code on the top of the Mims I Note not present at the top of the Mims II Note, and a barcode at the bottom of the Mims II Note not present on the Mims I Note.<br><br>There are what appear to be blackened permanent marker cross-out items which do not match as between the documents. There appear to be "√" marks throughout the body of the Mims I Note which do not appear on the Mims II Note. The size of the font also appears different.<br><br>The following endorsement appears stamped on the Note attached to the Mims II Motion which was not on the Note attached to the original Mims I Motion:<br><br>A second added endorsement at the bottom right of page 3 as follows: "PAY TO THE ORDER OF _____ WITHOUT RECOURSE, WASHINGTON MUTUAL BANK,FA" and is signed "Brenda F. Brendle, First Vice President"<br><br>There is no indication as to when the |

| | |
|---|---|
| | second endorsement was stamped on the document.  Moreover, Mr. Craig Zecher, as discussed below, certified the documents in both the Mims I and Mims II filings as true and correct copies of the original documents.[2]<br><br>For side by side comparison purposes, a copy of first the Mims I Note and the Mims II Note are attached as **Exhibit "A"** |
| 3.  A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" and which identifies the roles of certain parties, reading in relevant part as follows:<br>a.  "Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>b.  "Lender": Lend America; and<br>c.   "Nominee" is identified as MERS "For Purposes of Recording this Mortgage, MERS is the Mortgagee of Record." | SAME |
| 4.  A single page document "Assignment of Mortgage"  dated September 13, 2010, executed post-petition  and just one week prior to date of filing Mims I,  identifying the following parties and representations to the court:<br><br>a.  Original Lender: "Mortgage Electronic Registration Systems, Inc. as Nominee for Lend America"<br>b.  Assignor: "Mortgage Electronic Registration | SAME |

---

[2] According to the Mims II Memo written by Attorney Dennis Jose of the law firm, Steven J. Baum PC, the Mims I Note is somehow an older copy.  However, as per the respective certifications of Mr. Craig C. Zecher dated September 16, 2010 and again on October 29, 2010, the second endorsement (from Washington Mutual Bank FA to ____) was not present on the original Note as of September 16, 2010.  It further appears that Mr. Craig C. Zecher certifies that said second endorsement is present on the original Note as of October 29, 2010.  **The question now remains, when and with what authority was the second endorsement affixed to the Note post petition and without leave from the court?**

| | |
|---|---|
| Systems, Inc as nominee for Lend America" ;<br>c.  Assignee: "Wells Fargo Bank, NA"<br>d.  Signed by "John Kennerty, Assistant Vice President" ( presumptively of the assignor[3]) notarized in York County, South Carolina by Notary, Wendy Albertson Al-Hammadi | |
| 5.  A five (5) page declaration by Mr. Craig C. Zecher, "Legal Process Specialist" dated September 16, 2010 which indicates the purported calculation of debt and certifies the transactional documents as true and accurate copies of the originals. | SAME except that certain dates have been adjusted to reflect a month's passage since Mims I Motion.  The Craig C. Zecher declaration attached to Mims II Motion is dated October 29, 2010. |
| NOT ATTACHED | Affidavit of John Kennerty dated November 8, 2010 before Notary, Carolyn M. Evans.  Mr. Kennerty claims that Wells Fargo "became the holder of the Note April 14, 2010" but fails to explain how and in what capacity Wells Fargo Bank NA may be acting as a "holder." |
| NOT ATTACHED | "Corporate Resolution" signed by William C. Hultman as the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. dated August 16, 2010.[4] |

23.    On December 2, 2010, the Debtor filed an Objection to the Mims II Motion for Relief From Stay which appears on the court's ECF system as Doc. No. 29.

24.    After oral argument the Court denied the second Motion For relief From Stay, Mims II as follows:

"With respect to the Renewed Motion to lift the automatic stay, the Renewed Motion is denied without prejudice. The Court's reasons for doing so are very

---

[3] Based upon information and belief, said assignment of mortgage was recorded with the City Register, post-petition, on or about September 28, 2010.

[4] The Plaintiff disputes herein the effectiveness of the William Hultman signed "Corporate Resolution" based upon information and belief that Mr. Hultman lacked authority to bestow signing authority upon anyone including Mr. Kennerty.  This belief is based upon depositions of both William Hultman and R.K. Arnold, former President of MERS in unrelated cases.  Copies of the Depositions of Mr. Hultman and Mr. Arnold are available upon request.

simple. The October 27 Opinion sets forth the deficiencies in the earlier motion to lift the automatic stay. While the Renewed Motion addresses *some* of the issues raised in the prior opinion, not all of the issues have been satisfactorily addressed. With respect to the assignment of the note and mortgage, the October 27 Opinion stated: "An assignment in anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, *describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted.*" *Mims*, 438 B.R. at 57 (emphasis added).

The Renewed Motion provides some but not all of this information. Additionally, the Lift-Stay Worksheet, required by Local Bankruptcy Rule 4001-1(c), fails to demonstrate that Wells Fargo has personal knowledge of Mims' payment history. The October 27 Opinion stated: The signature on the Worksheet indicates that it was prepared by Craig C. Zecher, a Wells Fargo legal process specialist. Despite the fact that Wells Fargo did not obtain an assignment of the Mortgage until September 13, 2010, seven days before the [original] lift-stay motion was filed on September 20, 2010, the Worksheet provides information about payment defaults dating back to April 1, 2010. Wells Fargo's ability to certify the accuracy of the information provided in the Worksheet is questionable given its only recently acquired interest in the First Mortgage. *Mims*, 438 B.R. at 54. This problem has not been cured. While the Renewed Motion provided some (but not all) of the additional facts required about Wells Fargo's acquisition of the Promissory Note, no additional facts are provided regarding whether and when Wells Fargo became the loan servicer for the Mims' loan, and the basis for knowledge about the payment history." Mims II Order (ECF Doc No. 42 Pg. 3-4)

25.     On January 14, 2010 the court granted the Plaintiff's Motion to Convert from a Chapter 7 case to a Chapter 13 case and the case was reassigned to the Honorable Judge Shelley C. Chapman.

## C. Mims III: The First Proof of Claim No. 6-1

26.     On June 2, 2011, purported creditor Wells Fargo Bank, NA through its attorney, Natalie Grigg of the law firm of Steven J. Baum, PC, filed a Proof of Claim which appears as claim number 6-1 on the Court's ECF Claims Register (hereinafter "Mims III").

27.    The documents filed in Mims III, bolster the Court's concern in Mims II that Wells Fargo is either unwilling or unable to provide a credible explanation *describing how, when and from whom Wells Fargo derived its rights.*

28.    In addition to all documents submitted to the court in the Proof of Claim being deemed "Representations to the Court" per FRBP 9011(b), the requirements of FRBP 3011 (a), (b), (c) and (d) also apply.

29.    A side by side comparison of the supporting documents attached to "Mims I" "Mims II" and "Mims III" is set forth as follows:

| Mims I Motion | Mims II Motion | Mims III Proof of Claim 6-1 |
|---|---|---|
| Notice of Motion for Termination of Automatic Stay and Application executed by "Ehret A. Van Horn, Esq. of Steven J. Baum, PC."; | Notice of Motion for Termination of Automatic Stay and Application executed by "Dennis Jose, Esq. of Steven J. Baum, PC."; | Official Form B10 naming creditor as "Wells Fargo Bank , NA" stating amount of the claim as $351,545.63 including arrears of $11,352.18 executed by "Natalie Grigg, Esq." of Steven J Baum PC |
| A two (2) page document entitled "Note" bearing the date "May 10, 2004" at page one, identifying the following: <br> 1. Lender: "Lend America"; <br> 2. Borrower(s): Tandala Mims, Lydia Mims and Johnnie Belle <br> 2. Principal Sum Borrowed: "$374,037.00"; <br> 3. Interest Rate: "6.0%"; and <br> 4. Monthly Payment of Principal and Interest "$2242.54"; <br> 5. Specifically endorsed at the bottom left of page 2 as follows: <br> "Payable to the Order of: Washington Mutual Bank, FA Without Recourse, Lend America" and is signed by "HeleneDeCill Vice President" | A two (2) page note with identical content except that it appears to be either a completely different document. For example there are hole punch marks on the Mims I Note which do not appear on the Mims II Note. There is a bar code on the top of the Mims I Note not present at the top of the Mims II Note and a barcode at the bottom of the Mims II Note not present on the Mims I Note. <br><br> There are what appear to be blackened permanent marker cross-out items which do not match as between the documents. There appear to be "/" marks throughout the body of the Mims II Note which do not appear on the Mims II Note. The size of the font also appears different. <br><br> The following endorsement appears stamped on the Note attached to Mims II Motion which was not on the Note attached to the original Mims I Motion: <br><br> A second added endorsement at the bottom right of page 3 as follows: "PAY TO THE ORDER OF | A one(1) page untitled summary <br><br> The same two (2) page Note as that attached to Mims II Motion. Notably no explanation or validation for the second endorsement which suddenly appeared only after the court denied the Mims I motion. |

| | | |
|---|---|---|
| A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" and which identifies the roles of certain parties, reading in relevant part as follows:<br><br>1. "Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>2. "Lender": Lend America; and<br>3. "Nominee" is identified as MERS "For Purposes of Recording this Mortgage, MERS is the Mortgagee of Record."[2] | SAME | SAME |
| WITHOUT RECOURSE, WASHINGTON MUTUAL BANK,FA" and is signed "Brenda F. Brendle, First Vice President"<br><br>Given the other discrepancies between the two versions of the Note offered by the creditor, it is not clear as to when the second endorsement was stamped on the document. Moreover, Mr. Craig Zecher, as discussed below, certified the documents in both filings.[1] | | |

[1] According to the Mims II Memo, the Mims I Note is an older copy. However both are certified as "true and accurate copies of the original documents" as per the respective certifications of Mr. Craig C. Zecher dated September 16, 2010 and again on October 29, 2010. It seems that Mr. Zecher therefore certified the second endorsement (from Washington Mutual Bank FA to ____) was not present on the original Note as of September 16, 2010. It further appears that Mr. Craig C. Zecher certifies that said second endorsement is present on the original Note as of October 29, 2010. **The question now remains, when, whom and with what authority was the second endorsement affixed to the Note post petition and without leave from the court?**

[2] It is worth pointing out that the undersigned is unable to ascertain from the documents provided when or if MERS was ever identifies as a "Nominee" or "Mortgagee" for any purpose other than recording.

| | | |
|---|---|---|
| A curious single page document "**Assignment of Mortgage**" dated post-petition on September 13, 2010 identifyin the following parties and information:<br><br>1. Original Lender: "Mortgage Electronic Registration Systems, Inc. as Nominee fo Lend America"<br><br>2. Assignor: "Mortgage Electronic Registrati Systems, Inc as nominee for Lend Americ ;<br><br>3. Assignee: "Wells Fargo Bank, NA"<br><br>4. Signed by "John Kennerty, Assistant Vice President" ( presumptively of the assignor notarized in York County, South Carolina by Notary, Wendy Albertson Al-Hammad | **SAME** | **SAME** |
| A five (5) page declaration by Mr. Craig C Zecher, "Legal Process Specialist" dated **September 16, 2010** which indicates the purported calculation of debt and certifies the transactional documents as true and accurate copies of the originals.[4] | **SAME** as Mims I except that certain dates have been changed to reflect a month's passage since Mims I Motion. The Craig C. Zecher declaration attached to Mims II Motion is dated **October 29, 2010.** | **NOT ATTACHED** |
| **NOT ATTACHED** | Affidavit of John Kennerty dated **November 8, 2010** before Notary, Carolyn M. Evans. Mr. Kennerty claims that Wells Fargo "became the holder of | **NOT ATTACHED** |

13

---

[3] It is worth noting that in the Mims II Memo, attorney for the creditor explain Mr. Kennerty is an employee of Wells Fargo but also act as an officer of "Mortgage Electronic Registration Systems, Inc as Nominee for Lend America" but fails to indicate any inherent conflict of interest the dual roles present.

[4] The debtor hereby reserves her right to demand a full accounting and explanation of the use of so-called "suspense account" which is not provided for in the loan documents and violates the Truth in Lending Act as amended in 2009 mandating that all payments be credited to a consumer's account the same day as received.

| | | |
|---|---|---|
| NOT ATTACHED | the Note April 14, 2010" but fails to explain how and in what capacity Wells Fargo may be acting as a "holder." | |
| | "Corporate Resolution" signed by William C. Hultman as the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. dated August 16, 2010.[5] | NOT ATTACHED |
| | NOT ATTACHED | A two (2) page Affidavit of Erin A. Hirzel Roesch a "Default Litigation Specialist" at Wells Fargo Bank, NA dated **March 31, 2011**. The affidavit is similar in form to the affidavit of Mr. Kennerty in Mims II with both affiants claiming access to unspecified "books and records" but Mr. Kennerty's affidavit was executed in South Carolina and Ms. Roesch's affidavit was executed in Maryland. Was either party testifying from original documents? Neither affiant claims to be the custodian of records or asserts any personal knowledge of the chain of custody of the corporate records and loan documents. The Debtor objects to the Affidavit of Ms. Roesch which is nothing more than another attempt by Wells Fargo to get its story straight and it fails miserably. |

30.    In the manner prescribed by In re Minbatiwalla 424 B.R. 104 Bankr. Court, SD New York, 2010, Plaintiff's counsel served a letter dated June 8, 2011 on Attorney Natalie Grigg setting forth several primary issues in Mims III, and requesting clarification of the accounting and chain of transfers. A copy of the letter is attached hereto as **Exhibit "B"** .

31.    In response to the letter opposing counsel sent correspondence with documents attached to counsel for Debtor, attached hereto as **Exhibit "C"**.

Ms. Grigg's letter included the following documents:

     a.    A copy of a so-called "Corporate Resolution" undated, referencing it as a copy of a resolution adopted by the Board of Directors of MERS effective on August 16, 2010;

     b.    A spreadsheet bearing the logo of "Wells Fargo Home Mortgage" and titled, "Customer Account Activity Statement". Notably, this spreadsheet starts with a beginning balance as of December 4, 2007 and does not reflect entries going back to the date of the loan origination, May 10, 2004;

     c.    A single page of undecipherable origin bearing the title, "Escrow History"; and

     d.    Two pages of what appear to be invoices from "LPS Field Services". The first of the two pages bears the writing "Page 3" at the top center and "Page 4" approximately ¾ of the way down the center of the page and the second page indicates "Page 5" in the center of the page.

32.    In addition to the issues brought up in Plaintiff's letter referenced above and as set forth further herein, the Mims III Proof of Claim attempts to recoup escrow contributions twice by way of two different line items.

33.    The Debtor through her attorneys prepared an Objection to Proof of Claim #6-1 to be filed with the Court after a status conference on August 11, 2011.

34.    At a confirmation hearing and status conference on August 11, 2011, prior to the filing of the debtor's aforementioned Objection to Proof of Claim,   the Honorable Judge Shelley C. Chapman disallowed Wells Fargo's Proof of Claim, and provided Wells Fargo with one last opportunity to amend its claim within 30 days of the hearing.


**D. Mims IV: The Amended Proof of Claim No. 6-2**

35.    On September 9, 2011, purported creditor Wells Fargo Bank, through its attorney, the law firm of Hogan Lovells, filed an Amended Proof of Claim signed by former counsel, Natalie Grigg, Esq of the law offices of Steven Baum PC[5], which appears as claim number 6-2 on the Court's ECF Claims Register.  (hereinafter "Mims IV")

36.    The documents filed in Mims IV make it once again apparent that Wells Fargo is either unwilling or unable to provide a credible explanation *describing how, when and from whom Wells Fargo derived its rights*.

37.    In addition to all documents submitted to the court in the Proof of Claim being deemed "Representations to the Court" per FRBP 9011(b), the requirements of FRBP 3011 (a), (b), (c) and (d) also apply.

38.    A side by side comparison of the supporting documents attached to "Mims III" and "Mims IV" is set forth as follows:

---

[5] Based upon the representations of Attorney Nicole Schiavo of Hogan Lovells at the conference on October 20, 2011, she was under the impression that a motion to substitute counsel was filed and undecided at the time Mims IV was filed and for this reason, Hogan Lovells worked in tandem with Steven Baum PC on the filing. (see Transcript)

| | Mims III Proof of Claim 6-1 | Mims IV Proof of Claim 6-1 |
|---|---|---|
| 1. Official Form B10 naming creditor as "Wells Fargo Bank , NA" stating amount of the claim as $351,545.63 including arrears of $11,352.18 executed by "Natalie Griggs, Esq." of Steven J Baum PC<br><br>A one(1) page untitled summary of the Arrears Claimed as of Petition Date in relevant part as follows:<br><br>Pre-Petition Arrears:<br><br>4 Payments at $2771.96     $11,087.84<br>(April 1, 2010 – July 1, 2010)<br><br>Accrued Late Charges     $ 448.50<br>Escrow Shortage     $243.65<br>Property Inspections     $ 45.00<br>Unapplied Funds     ( $ 2642.81)<br><br>TOTAL:     $ 11,352.18 | SAME<br>(Date of POC 6-2 is September 9, 2011) | |
| 2. The same two (2) page Note as that attached to Mims II Motion. Notably no explanation or validation for the second endorsement which suddenly appeared only after the court denied the Mims I motion. | SAME | |
| 3. A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" and which identifies the roles of certain parties, reading in relevant part as follows:<br>a. "Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>b. "Lender": Lend America; and<br>c. "Nominee" is identified as MERS "For Purposes of Recording this Mortgage, MERS is the Mortgagee of Record."[1] | SAME | |

[1] It is worth pointing out that the undersigned is unable to ascertain from the documents provided when or if MERS was ever identified as a "Nominee" or "Mortgagee" for any purpose other than recording.

17

| | |
|---|---|
| 4. A single page document **"Assignment of Mortgage"** dated post-petition on September 13, 2010 identifying the following parties and information:<br><br>A. Original Lender: "Mortgage Electronic Registration Systems, Inc as Nominee for Lend America"<br>B. Assignor: "Mortgage Electronic Registration Systems, Inc a nominee for Lend America";<br>C. Assignee: "Wells Fargo Bank, NA"<br>d. Signed by "John Kennerty, Assistant Vice President" (presumptively of the assignor[2]) notarized in York County, South Carolina by Notary, Wendy Albertson Al-Hammadi | SAME |
| 5. A two (2) page Affidavit of Erin A. Hirzel Roesch a "Default Litigation Specialist" at Wells Fargo Bank, NA dated **March 31, 2011**. The affidavit is similar in form to the affidavit of Mr. Kennerty in Mims II with both affiants claiming access to unspecified "books and records" but Mr. Kennerty's affidavit was executed in Maryland. Was either party testifying from original documents? Neither affiant claims to be the custodian of records or asserts any personal knowledge of the chain of custody of the corporate records and loan documents. | An eight (8) page Affirmation of Attorney Natalie Grigg[3] together with a with a purported "Corporate Resolution" purportedly signed by "William C. Hultman, Secretary of MERS" which reads in relevant part at the last paragraph,<br><br>"1, William C. Hultman, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of day 16 of August, 2010 which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation"[4]<br><br>A five (5) page Affidavit of Erin A. Hirzel Roesch a "Default Litigation Specialist" at Wells Fargo Bank, NA dated September 9, 2011, together with the following attachments:<br><br>a. The same two (2) page Note as that attached to Mims II Motion.<br>b. A two (2) page "Recording and Endorsement Page" and an eight (8) page document entitled "Mortgage" bearing the date "May 10, 2004" and which identifies the roles of certain parties reading in relevant part as follows:<br>1)"Mortgagor": Tandala Mims, Lydia Mims and Johnnie Belle;<br>2) "Lender": Lend America; and |

[2] It is worth noting that in the Mims II Memo, attorney for the creditor explain Mr. Kennerty is an employee of Wells Fargo but also act as an officer of "Mortgage Electronic Registration Systems, Inc as Nominee for Lend America" but fails to indicate any inherent conflict of interest the dual roles present.

[3] Attorney Grigg's affirmation reads like a memo, however to the extent it is "testimony" the same should be stricken for lack of foundation.

[4] The paragraph referencing an original Resolution adopted by MERS referenced by Mr. Hultman is the subject of much litigation. As indicated in the debtor's objection to proof of claim, the original resolution has been requested in other proceedings but to date, never produced.

3) "Nominee" is identified as MERS "For Purposes of Recording t
his Mortgage, MERS is the Mortgagee of Record."

c.   A copy of a THREE (3) page letter dated November 24, 2006 from "Wells Fargo
Home Mortgage" to Ms. Tandala Mims

d.   A ½ page identified across the top as "Document Name; Untitled" and "Loan Transfer
History"

e.   The same "Assignment of Mortgage" as presented in Mims I, II and III, dated
September 13, 2010 signed by John Kennerty

f.   A THREE (3) page letter from Washington Mutual Home Loans to Ms. Tandala Mims
and Ms. Lydia Mims dated November 15, 2006

g.   TWO Federal Express chipping lables dated September 9m 2011 from
Erin Hirzel of Wells Fargo Home Mortgage in Frederick MD to Allison Schoenthal
of Hogan Lovells

19

### E. The Requests per TILA and RESPA and Responses Thereto

39.    On December 7, 2010, the Debtor/Plaintiff through counsel served a Qualified Written Request ("QWR") pursuant to RESPA and TILA which appear as documents 37 and 38 on the court's ECF system. (Copies attached hereto as **Exhibits "D" and "E"**, respectively)  By way of response, Plaintiff's counsel received competing written correspondences from Wells Fargo Home Mortgage, dated December 20, 2010, which is attached hereto as **Exhibit "F"**, and additional correspondence from Attorney Natalie Grigg, dated January 14, 2011, attached hereto as **Exhibit "G"**.    The documentation and information provided in the two responses is demonstrated via side by side comparison as follows:

| 12/20/2010 QWR Response from Wells Fargo | 01/14/2011 QWR Response from Attorney Grigg |
|---|---|
| 1.   In response to Debtor's inquiry as to the identity of the owner of her loan, response is as follows:<br>"The investor for this loan is Wells Fargo Home Mortgage" | 1.  In response to Debtor's inquiry as to the identity of the owner of her loan, response is as follows:<br>"Regarding your request in number 19, the current holder of the debt is Wells Fargo Bank, NA…" |
| 2.   A spreadsheet bearing the logo of "Wells Fargo Home Mortgage" and title, "Customer Account Activity Statement" Notably, this spreadsheet starts with a beginning balance as of December 4, 2007 and does not reflect entries going back to the date of the loan origination, May 10, 2004. | 2.   A spreadsheet bearing the logo of "Wells Fargo Home Mortgage" and title, "Customer Account Activity Statement" Notably, this spreadsheet starts with a beginning balance as of December 4, 2007 and does not reflect entries going back to the date of the loan origination, May 10, 2004.<br><br>Ms. Grigg further attached with the spreadsheet a document which appears to be screenshots "Wells Fargo Bank, NA Loan History" The undersigned recognizes the same as what are commonly referred to as "CPI" or "MSP" reports. |
| 3.   A two page "Note" dated May 10, 2004 bearing one endorsement from "Lend America" to Washington Mutual Bank, FA" | 3.   A two page "Note" dated May 10, 2004 bearing two endorsements as follows:<br>a.   from "Lend America" to Washington Mutual Bank, FA"; and<br>b.   from Washington Mutual Bank, FA to Blank. |
| 4.   An eight page "Mortgage" dated May 10, 2004 | 4.   An eight page "Mortgage" dated May 10, 2004 together with a two page recording and endorsement cover page. |
| No Assignment of Mortgage | 5.   A single page "Assignment of Mortgage" dated September 13, 2010 signed by "John Kennerty, Assistant Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for Lend America." |
| No  Invoices or Reports Attached | 6.   Four pages numbered at the top right, "1 of 4" through "4 of 4" Each with what appear to be invoices or report from LPS.<br><br>Forty-one pages numbered at the top right, "1 of 41" through "41 of 41" Each with what appear to be invoices or reports from LPS. |

| | |
|---|---|
| | Four pages numbered at the top right, "1 of 4" through "4 of 4" Each with what appear to be invoices or report from LPS. These appear to be a second copy of the four pages referenced above. |
| No Payoff Provided | 7.   Two letters from the Steven J Baum firm dated January 14, 2011, the first indicating a payoff summary.  Said summary includes fees and charges not disclosed on the later filed proof of claim or amended proof of claim. |
| | 8.   A letter dated November 24, 2006 from Wells Fargo Home Mortgage to Tandala Mims and Lydia Mims |

### V. CLAIMS FOR RELIEF

**A.**  **First Claim for Relief:  Fraud on the Court:  the false affidavit of Wells Fargo's Erin Hirzel Roesch**

40.  Attached to the Mims III, Proof of Claim 6-1, is perhaps one of the most outrageous examples of a false affidavit imaginable, matched only by the affidavits attached to Mims IV, Amended Proof of Claim 6-2.   Completely deviating from the "story" told in Mims I and Mims II, Ms. Roesch comes up with something completely new and improbable for the reader in Mims III and Mims IV.  According to Ms. Roesch, a Default Litigation Specialist, who presents no basis for personal knowledge of anything she is testifying to, her attestation of the chain of transfers and title is as follows:

   *a.*  Ginnie Mae owned the loan since some unknown date in 2004 as per Mims III and since June 22, 2004 as per Mims IV;

   *b.*  Washington Mutual Bank, NA was the servicer for Ginnie Mae as of some undisclosed date;

   *c.*  Wells Fargo began servicing the loan on behalf of Ginnie Mae on December 1, 2006;

   *d.*  In March 2010, exact date not stated, Wells Fargo Bank, N.A. purchased the loan from Ginnie Mae;

   *e.*  Wells Fargo took physical possession and became holder of the original Note as of April 14, 2010.

41.  The Roesch affidavits fail to meet any of the foundation rules for having personal knowledge.  The affiant has no personal knowledge to speak of and claims only to be a party with "access" to the "books and records" without specificity as to what records and

books she is referring to or how the same are accessed.  The affiant offers nothing to substantiate how she personally knows the consumers actually signed the loan documents or how she has personal knowledge of the transactions and events she describes.

42.  On a more substantive basis, the dates, times and facts in Ms. Roesch's affidavit and the other supporting documents to the Mims III Proof of Claim are not consistent.

43.  Ms. Roesch's affidavit is full of conclusions of law and offers insufficient facts upon which those conclusions could be made by the trier of fact.

44.  Ms. Herzel Roesch testifies in Mims III that Government National Mortgage Association ("Ginnie Mae") "owned" the debtor's loan since 2004 without providing a specified date, documentation or method of acquisition.[6]  At best, Ginnie Mae might have acted as guarantor of the notes and bonds issued by a Trust that owned the loan.  The court may take judicial notice that Ginnie Mae does not own any loans.  Ginnie Mae is a guarantor set up by the federal government.  Ginnie Mae does not purchase loans or sell loans.  Ginnie Mae's website with explanation of its role is available for public viewing at the following link: http://www.ginniemae.gov/media/ginnieFAQ.asp?Section=Media

45. The Court may take judicial notice of the following:

   a.  If Ginnie Mae did own the debtor's loan from any point in 2004 –March 2010, the proof of claim as filed is deficient in that it offers no evidence of the same;

   b.  If Washington Mutual Bank, FA never owned the loan, the endorsements to and from Washington Mutual Bank, FA on the note make no sense or are fraudulent;

   c.  If Wells Fargo bought the loan from Ginnie Mae, there should be assignments from Ginnie Mae to Wells Fargo along with an endorsement on the note;

---

[6] The court may take judicial notice that Ginnie Mae is a guarantor and does not purchase or sell loans as per the official website : http://www.ginniemae.gov/media/ginnieFAQ.asp?Section=Media

d. Both the John Kennerty Assignment of Mortgage and the Affidavit of Erin Hirzel
Roesch cannot be true.

e. The Affidavits presented to this court in Mims I and Mims II contradict the
Affidavits of Erin Hirzel Roesch in Mims III and IV.

**B. Second Claim for Relief: Objection to Proof of Claim 6-1 and Amended Proof of Claim
6-2**

Rebuttal of Federal Rules of Evidence 902(9):

46. Paragraphs 1 through 45 are incorporated herein by reference and made part of this the first
claim for relief.

47.    The Note affixed to the submissions in Mims I bearing one specific endorsement was
certified to be a true copy of the original as per FRBP 9011.

48.    The same version of the note presented in Mims I was again provided to the debtor as
part of a response directly from Wells Fargo Home Mortgage in Iowa on December 20,2010
after two unsuccessful attempts by Wells Fargo and its attorneys to obtain relief from the stay in
Mims I and Mims II.

49.    Only after the court denied Wells Fargo's Motion for Relief From Stay in Mims I did a
rubber stamp endorsement suddenly appear on a copy of the note as presented in Mims II.

50.    The debtor objects to the authenticity of the rubber stamp endorsement in blank from
Washington Mutual Bank, FA.  Wells Fargo Bank claims it received delivery of the physical
note on April 14, 2010 with no indication of where, how or from whom the Note was delivered
and no indication as to who received it.

51.    According to the FDIC online records, the entity known as "Washingon Mutual Bank

F.A." changed its name to "Washington Mutual Bank" as of April 4, 2005.[7] (see **Exhibit "H"**

attached hereto) The rubber stamped endorsement in blank named Washington Mutual Bank,

FA as the endorser which, if authentic, would mean that the stamp was placed there less than

one year after the date of origination of the loan on May 10, 2004.  Wells Fargo fails to explain

when and from whom Washington Mutual Bank, FA acquired the note.  In fact, Wells Fargo

makes the ridiculous assertion that it was Ginnie Mae that owned the Note continuously from

June 22, 2004 through April 14, 2010.

52.    Plaintiff asserts that Ginnie Mae is not "like" Fannie Mae or Freddie Mac.  Ginnie Mae

states its purpose clearly on its website as follows:

> "Ginnie Mae does not buy or sell loans or issue mortgage-backed securities
> (MBS). Therefore, Ginnie Mae's balance sheet doesn't use derivatives to hedge or
> carry long term debt.
>
> What Ginnie Mae does is guarantee investors the timely payment of principal and
> interest on MBS[8] backed by federally insured or guaranteed loans — mainly loans
> insured by the Federal Housing Administration (FHA) or guaranteed by the
> Department of Veterans Affairs (VA)."

The "About Ginnie Mae" page on its official website is available for public viewing at:

http://ginniemae.gov/about/about.asp?subTitle=About

53.    Simply put, Ginnie Mae does not buy or sell loans.  Ginnie Mae would at best, guarantee

loans owned by pools of Mortgage Backed Securities ( MBS).  Ms. Mims's loan might have

been owned by a trust, but Wells Fargo has yet to explain why, if Ginnie Mae owned Ms.

Mims' loan, would the endorsement be made to Washington Mutual Bank, FA.

---

[7] The Institution Directory maintained for public access at the FDIC may be reached at the following link:
http://www2.fdic.gov/idasp/main.asp
[8] Mortgage-Backed Securities

54.     The screen shots of the purported loan history attached to Attorney Grigg's response to the QWR as mentioned hereinabove further contradict the story presented in the Mims IV Amended Proof of Claim indicating more than one investor and dates which do not coincide with the claimants' affidavits.

55.     If Washington Mutual Bank, FA did posses ownership rights to the note, Plaintiff asserts that her loan would have been acquired by JP Morgan Chase as part of the purchase assumption agreement with the FDIC subsequent to the take-over of Washington Mutual in the summer of 2008, which would require additional endorsements from both the FDIC and JP Morgan Chase.

56.     This court would not be the first to find a rubber stamped endorsement with no indication of its authenticity doubtful enough to overcome the presumption of FRE 902(9).  On July 12, 2011 in the case of <u>In re Priscilla Taylor</u> 10-22652 S.D.N.Y. the Honorable Judge Robert D. Drain denied summary judgment to HSBC and its Servicer, Bank of America as follows:

> **"I am troubled by the fact that the signature on the endorsement appears
> to be in the same ink and the same color and the same quality as the
> stamped lettering of the endorsement. To my mind, that takes this matter
> out of the realm of a forged signature, and simply into the more easily
> rebutted realm of potentially a stamp that includes the signature that
> may have been in the possession of any number of people at
> Countrywide, and could have been added without Fremont's consent. *I
> believe that evidence, which is the face of the note itself, combined with the
> other factors that I have described, raises a sufficiently serious issue as to
> when, and more importantly, by whom this note was endorsed to rebut the
> self-authentication presumption of FRE 902(9).* And I will, therefore, deny
> the motion for summary judgment and permit the debtor to take
> discovery as to the endorsement and how it was placed on the back page
> of the note."** (emph. Added) <u>In re Taylor</u> 10-22652 ECF Doc. 55 "Order
> on Summary Judgment" referencing "Transcript" ECF Doc.57 p. 63-65.

57.     The Plaintiff asserts that the presumption of self-authentication of the Note presented to the court on October 20, 2011 is rebutted absent Wells Fargo's ability to overcome the history

of this case and comply with the clear directive of the court to give a "credible explanation, describing how, when and from whom Wells Fargo derived its rights…" <u>Mims</u> at 57.

58.     Upon information and belief, Claimant does not have standing, and has not established that it acquired the Note with a proper endorsement prior to the filing of the debtor's petition.

59.     Based on the fact that the same note bearing a single endorsement was produced attached to the first Motion for Relief From Stay (Mims I) and also produced in response to a Qualified Written Request and research conducted by Debtor's counsel, it appears that the second rubber stamped endorsement on the note attached to a subsequent court submissions may be invalid , fraudulent or otherwise placed on the note without proper authority.

**C.   <u>Third Claim for Relief: Itemization of Proof of Claim Includes Unsubstantiated  Costs and Double Dipping Escrow</u>**

60.  Paragraphs 1 through 59 are incorporated herein by reference and made part of this the first claim for relief.

61.  Upon information and belief, the claimed pre-petition attorney fees and costs, inspection fees, appraisal fees, title work, and escrow advance were neither reasonable nor necessary, are not supported by time and expense records, and have been claimed in violation of Section 506(b) of the code and Bankruptcy Rule 2016(a).

62.  The prepetition arrears portion of the Proof of Claim # 6-1 and amended claim 6-2 both attempt to recoup escrow contributions from two different line items as follows:

     a.   Payments : 4@ $2771.96

          The principal and interest portion of these payments is $2242.54 and the balance is the escrow contribution ( $2771.96 – $2242.54 = $529.42).

          Escrow contribution from the 4 delinquent payments = $2772.68. ($529.42x4)

    b.  Escrow Shortage (listed on POC) : $2413.65

The proof of claim is claiming $2117.68 +$2413.65 = $4531.33 in escrow contributions.

    c.  The escrow shortage as per the transaction history on 7/27/2010 (filing date) is $1682.12.

    d.  The proof of claim is claiming $2849.21 more in escrow than what the transaction history shows is actually owed. ($4,531.33-1,682.12 = $2,849.21)

    e.  The integrity of all numbers on the itemized proof of claim are unverified and objected to by the debtor.

63. Attorney Grigg states in her letter dated June 17, 2011 that the contractual payment history attached thereto was used in the preparation of the proof of claim ( see Ex. "__" pg. 2, paragraph d.) However, the only payment history attached thereto starts on December 4, 2007 and gives no indication of the account from the date of origination, May 10, 2004.

64. The numbers could not have been verified by the claimant or the attorney filing the proof of claim, if the account history relied upon is an incomplete record.

**D.  Fourth Claim for Relief: Lack Of Standing / Real Party In Interest**

65. Paragraphs 1 through 64 and the allegations are incorporated herein by reference, realleged and made part of this the third claim for relief.

66. There is no documentation provided in Proof of Claim #6-2 proving a complete chain of title from "Lend America" to "Wells Fargo Bank, NA"

67. The creditor must prove that it is the real party in interest as the rightful owner and holder of both the Note and the Mortgage and that it has the legal right to enforce the same. Wells Fargo has failed to meet this burden.

68. There was no writing filed with the Proof of Claim or Amended Proof of Claim demonstrating the purported creditor's interest in the property securing the claim in violation of B.R. 3001(c).

69. There is no apparent chain of transfers attached to the proof of claim to explain how or when the purported creditor came to own the debtor's loan.

70. A federal Court cannot have jurisdiction unless a party has constitutional standing. The claimant fails to provide any credible evidence as to if, when or how the note was transferred to Ginnie Mae, Washington Mutual Bank, FA or Wells Fargo.

71. The purported creditor is therefore, not a creditor or the real party in interest and has no standing to file its sworn proof of claim in the Plaintiff's Chapter 13 case.

72. A Proof of Claim is subject to Fed.Rules Bankr. Pro. 7017 which is a restatement of F. R. Civ. P. 17.

73. The Plaintiff avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the *owner* of a note. Because the actual name of the true note owner is not ascertained, the creditor's very claims are defective.

74. In the case at bar, the claimant, Wells Fargo Bank, N.A., offers no viable explanation for the "convenient" assignment of mortgage signed by its own employee pretending to act as a nominee of a company no longer in existence nor for the "surprise" endorsement on the note in later pleadings.

75. The United States Constitution Article III §2 specifically limits the jurisdiction of the federal courts to "Cases or Controversies." Justice Powell delivered the Opinion of the Supreme Court in the case of <u>Warth v. Seldin</u> addressing the question of standing in a federal court as follows:

> In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues. This query involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. In its constitutional dimension, standing imports judiciability: whether the plaintiff has made out a —case or controversy‖ between himself and the defendant within the meaning of Art.III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of judiciability, the standing question is whether the plaintiff has —alleged such a personal stake in the outcome of the controversy‖ as to warrant *his* invocation of federal –court jurisdiction and to justify exercise of the court's remedial powers on his behalf. <u>Baker v. Carr</u> 369 U.S.186,204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663(1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party…A Federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered —some threat or actual injury resulting from the putatively illegal action…‖ <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617, 93 S.Ct. 1146,1148, 35 L.Ed.2d 536 (1973).‖ <u>Warth v. Seldin</u> 422U.S.490, 498 (1975)

> Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. …, even when the plaintiff has alleged injury sufficient to meet the —case or controversy‖ requirement, this Court has held that the **plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.** E.g., Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).‖ <u>Warth v. Seldin</u> 422U.S.490, 499 (1975) **(emphasis added)**

76. The Plaintiff in the instant case reiterates that a party seeking relief in any Federal Court "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v American Tobacco Company, 183 F.3d 488, 494 (6th Cir. 1999).* Again, the minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge Christian College v Americans United for Separation of Church*

31

*& State, Inc.*, 454 U.S. 464, 473 (1982). Furthermore, in order to satisfy the requirements of

Article III of the United States Constitution, any claimant asserting rights in a Federal Court

must show he has personally suffered some actual injury as a result of the conduct of the

adverse party. *Coyne*, 183 F.3d at 494; *Valley Forge*, 454 U.S. at 472.

77.  As set forth hereinabove, the claimant can make no assertions as to its own interest in the

outcome of the claims it is making, nor does the claimant make any mention of any perceived

injury to itself.  In fact, if Wells Fargo's story is to be believed, it purchased a delinquent

mortgage on an underwater property in the middle of the biggest foreclosure crisis this

country has ever known.

**E.  Fourth Claim for Relief: Violation of the Automatic Stay**

78.  Paragraphs 1 through 77 and the allegations are incorporated herein by reference, realleged

and made part of this the fourth claim for relief.

79.  Wells Fargo's repeated attempts to collect against the debtor/plaintiff, constitutes a gross and

willful violation of the Automatic Stay pursuant to 11 U.S.C. section 362(a)(3), 362(a)(4)

and 362(a)(5).

80.  As a result of the violation of the automatic stay as described herein, the defendant is liable to

the Plaintiff for actual damages, punitive damages and legal fees under 362(k)(1) of the

Bankruptcy Code.

**F.  Fifth Claim for Relief:  Declaratory Judgment**

81.  Paragraphs 1 through 80 are incorporated herein by reference and made part of this the fifth

claim for relief.

82. At no time relevant to the allegations herein was Wells Fargo the actual "holder" and the lawful "assignee" of the mortgage note originally signed by the Plaintiff and properly endorsed by the prior holder.

83. Therefore, the Defendant has no constitutional standing to file a claim or otherwise participate in this Chapter 13 proceeding.

84. Because the Defendant was not the actual "holder" and lawful "assignee" or "endorsee" of the Debtor/Plaintiff's mortgage loan, Defendant has no security interest, and no right to seek to collect money from the Plaintiff

85. As a result thereof the Defendant should be ordered to pay back to the Chapter 13 Trustee all funds received from the Plaintiff in the form of direct mortgage payments.

86. Plaintiff seeks a declaratory judgment holding that:

A. Wells Fargo has no enforceable secured or unsecured claim against the property of the estate in bankruptcy, as follows:

i.   The purported assignment from MERS as Nominee for Lend America to the Wells Fargo is void and ineffective.

ii.  The endorsement on the note from Washington Mutual Bank, FA to "_____" could only have been placed on the note post-petition if Mr. Zecher's certifications are to be believed.

iii. Plaintiff also seeks a judgment declaring Defendant's claimed security interest void pursuant to 11 U.S.C. § 506(d).

**G.    Sixth Claim for Relief:  Fraud on the Court Including False and Fraudulent Proof of Claim and Supporting Documents**

87.    The allegations in paragraphs 1 through 86 of this complaint are hereby realleged and incorporated herein reference in this the sixth claim for relief.

88.    The proof of claim filed by Wells Fargo Bank, NA was false and fraudulent for the following reasons:

a. It included a note bearing a false or otherwise unauthorized endorsement;

b. Wells Fargo Bank, NA does not actually own the note or have constitutional standing to file a proof of claim;

c. Upon information and belief, Wells Fargo submitted unsubstantiated and inflated charges, fees and such improper line items in its proof of claim;

d. It includes attorneys' fees that were excessive, and that were neither reasonable nor necessary;

e. Upon information and belief, it includes inspection fees and appraisal fees that were inflated, marked-up, and/or false in that the appraisals, BPO's, Title work and inspections were not actually performed.

89.    The document so-called "Assignment of Mortgage" signed by John Kennerty attached as an exhibit to Mims I, Mims II, Mims III and Mims IV is a fabricated document.  The Assignor, MERS as Nominee for Lend America, could not possibly have acted with any authority from the defunct entity, Lend America[9].  As discussed at length in the Debtor's Objection to Mims II ( ECF Document #29) the party executing the Assignment of Mortgage, John Kennerty, was/is a robo-signer employed by Wells Fargo who has admitted under oath that he routinely signed 150 documents per day as part of his regular

---

[9] The court explored the status of Lend America as a non-viable entity on the date of the purported assignment in detail on record in Mims I.

job duties outside the presence of a notary and without personal knowledge of the facts. FRBP 3001(c) requires that "when a claim, or interest in property of the debtor securing the claim is based on a writing, the original or a duplicate shall be filed with the proof of claim" The Assignment of Mortgage attached to POC 6-1 and 6-2 is not an original writing that the claim is based upon nor is it the duplicate of a writing upon which the claim could be based. FRBP 3001(c) does not permit or excuse "commemorative" documents, it requires the real documents evidencing the claim be attached.

90. The Assignment is ineffective and was submitted to bolster Wells Fargo's claim that it is entitled to enforce the Note.

91. This Court has authority under 11 U.S.C. § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

92. The Court should impose sanctions on Defendant for filing an improper claim in this case.

93. Plaintiff therefore requests that Court invoke the powers granted to it by 11 U.S.C. § 105, and issue such order, process or judgment necessary to address the fraud of the Defendant and to prevent any future fraud or abuse of process. In the alternative, the Plaintiff requests this Court to waive the pre-notice time requirements of Rule 9011 of the Bankruptcy Rules and to impose sanctions under that Rule.

**WHEREFORE**, Plaintiff respectfully prays as follows:

A. That the Court disallow and strike the Proof of Claim#11-1;

B. That the Court direct the Chapter 13 Trustee to strike the Proof of Claim;

C. That Wells Fargo Bank, N.A. be precluded from filing any amended, modified, or substitute claim in this case;

D. That the alleged arrearages contained in the Proof of Claim be canceled

and forever discharged;

E. That the proof of claim be disallowed;

F. That Wells Fargo Bank, N.A. be required to pay all legal fees and expenses to the

attorney for Plaintiff ;

G. That Wells Fargo Bank, N.A. provide a complete accounting of the Debtor's mortgage

loan account, forthwith;

H. That Defendant's claimed security interest be declared void pursuant to 11 U.S.C. §

506(d) ;

I. That any claim allowed on behalf of Wells Fargo in this case, be subject to *equitable

subordination* reducing said claim in a sum equal to the costs and expenses of any and all

litigation brought about by reason of the two Motions to Lift Stay, Objection to Motion to

lift Stay, Proofs of Claim #6-1 and 6-2 and the instant Adversary Proceeding filed and all

work related to the same; and

J. That Plaintiff have such other and further relief as the Court may deem just and

proper.

WHEREFORE,  Plaintiff prays that the Court grant the relief requested herein.

RESPECTFULLY SUBMITTED,

/s/ Linda M. Tirelli
LINDA TIRELLI
Of Counsel to David Brodman, Esq.
Counsel for Debtor
1 North Lexington Avenue, 11th Floor
White Plains, NY 10601